UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LIAM KAHN,

               Plaintiff,

-vs-

ONTEORA CENTRAL SCHOOL DISTRICT,
LANCE EDELMAN, JESS ROBERTSON,
sued in their individual capacities

               Defendants.
------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

Case no. 1:12-CV-0206(TJM/ATB)

### I    INTRODUCTION

1. Plaintiff brings this action to redress the violation of his civil rights. Over the course of approximately five years at Onteora Central School District, plaintiff endured a hostile educational environment on account of his sexual orientation. Defendants were deliberately indifferent to the routine stereotypic discrimination and bullying that plaintiff sustained, causing him to withdraw from school.

### II    PARTIES

2. Plaintiff Liam Kahn resides in Woodstock, New York, within this judicial district.

3. Defendant Onteora Central School District is a municipal entity organized by the laws of the State of New York.

4. At all times relevant to this action, defendant Lance Edelman was the duly appointed principal of Onteora Central High School and is thus a state actor. He is sued in his individual capacity.

5. At all times relevant to this action, defendant Jess Robertson, was vice principal at Onteora High School and is thus a state actor. She is sued in her individual capacity.

**III     JURISDICTION & VENUE**

6. Plaintiff brings this action under the Title IX of the Civil Rights Act of 1964 and the Equal Protection Clause of the U.S. Constitution. This Honorable Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1343(3) & (4); 20 U.S.C. § 1681 and 42 U.S.C. § 1983.

7. As the events giving rise to this action arose in Ulster County, this case is properly venued in the Northern District of New York.

**IV     FACTUAL AVERMENTS**

8. At all times relevant hereto, plaintiff was a student enrolled in the Onteora Central School District.

9. In September 2006, when he was in seventh grade, plaintiff "came out" as an openly gay male. After classmates found out that plaintiff was gay, he was taunted and bullied by other students on account of his sexual orientation and their perception, based on plaintiff's gestures and mannerisms, that he did not conform to the male gender stereotype. Students routinely called plaintiff "queer," "faggot" and "cocksucker" in the hallways and elsewhere on school property.

10. In September 2006, plaintiff was bullied in the lunch room by three male students who told him to "go slit your wrists." Plaintiff reported the incident to his guidance counselor, Sarah Turck, who did not take any steps to stop the harassment. However, that month, plaintiff told the middle school principal, Gale Kavanagh, about the harassment. Upon information and belief, Kavanagh gave the three students detention and a warning.

11.     In October 2006, after hurling anti-gay invective at plaintiff in school, student J.C. punched plaintiff in the back of his head. The same day, J.C. sent plaintiff a death threat via MySpace, an on-line social networking site. During the on-line attack, J.C. referred to plaintiff as a "fucking Jewish faggot" and "dumb faggot." J.C. also wrote to plaintiff, "You fucking

2

faggot stupid Jew. I'm a Nazi. I will kill you." Plaintiff reported this harassment to Kavanagh, who suspended J.C. for the rest of the year. In addition, the State Police charged J.C. as a juvenile delinquent. Although no finding was entered by Family Court, plaintiff was given an Order of Protection for one year.

12. Throughout the remainder of the school year, plaintiff was bullied by student F.S., saying "you look so gay" or that something that plaintiff said was "really gay." When plaintiff asked F.S. why he was bothering him, F.S. said that he did not want a "gay kid" coming on to him. Not only was this statement untrue, like the other acts of harassment against plaintiff, these comments reflected the view among plaintiffs' classmates that he did not conform to the traditional male stereotype. Although the Home Economics teacher, Mrs. Schermerhorn, often witnessed this harassment, nothing was done to protect plaintiff.

13. During the same school year, another student in plaintiff's Science class asked if plaintiff "liked dick." The Science teacher failed to reprimand the offending student. Similarly, in Home Economics class, after a classmate, D.G., was ordered to sit next to plaintiff, another classmate warned D.G. to "not drop the soap." A substitute teacher witnessed this incident, but did nothing to reprimand the offending student.

14. Also during the 2006-07 school year, plaintiff was routinely taunted by students D.G. and A.J., who called him "fag." Throughout the year, A.J. repeatedly accosted plaintiff in the hallways, calling him "fag," "queer," and "cocksucker" and other expletives. Plaintiff reported these incidents to his guidance counselor, Sarah Turck, who did nothing to stop the harassment. Plaintiff also reported these incidents to the district administration, including Kavanagh, who always acted to protect plaintiff.

15. Unfortunately for plaintiff, Kavanagh retired at the end of the 2006-07 school

3

year. Although plaintiff continued to be harassed because of his sexual orientation for the remainder of his high school enrollment, without Kavanagh present to discipline the offending students, the district and its administrators were deliberately indifferent to the harassment even though they knew that the anti-gay bullying had been taking place since September 2006.

16. In September 2007, when plaintiff was in eighth grade, in an attempt to halt the continuous bullying, plaintiff attempted to start up a Gay-Straight Alliance. However, despite plaintiff's attempt to raise awareness among his fellow students, students regularly called plaintiff "fag," "faggot" and "queer" throughout the year and told him that "bullying is part of growing up; you're being a wimp." These comments were made in the presence of teachers and hall monitors. Plaintiff reported this harassment to the middle school principal, Paul Schwartz.

17. While some of the offending students received verbal warnings because of the harassment, that did not deter them from continuing the harassment and bullying. The district knew, or should have known, that attempts to discipline individual students for the anti-gay harassment and gender stereotyping did not stop other students from similarly harassing plaintiff. However, the district did not reexamine its strategies to ensure that plaintiff could attend school in a non-discriminatory environment.

18. As a middle-school student, plaintiff also complained about the harassment and identified the offending students to the principal, at least twice per month. To plaintiffs' knowledge, other than verbal warnings, Schwartz did not mete out any discipline against the offending students, and the school did not put in place any comprehensive programs to stop the systemic harassment of plaintiff because of his sexual orientation.

19. Plaintiff entered high school in the 2008-09 school year. During 2008, in ninth

grade, plaintiff and his mother continued to report instances of student-on-student bullying and offensive conduct to administrators and guidance counselors. In 2008-09, plaintiff in particular complained about the harassment and provided names of the offending students to the head of discipline, Vice Principal Gabriel Bono. In response, Bono told plaintiff, "[W]e can't stop it all." Bono also told plaintiff that high school students can be cruel. He revealed the district's reactive approach to the problem by telling plaintiff that the school tries to address bullying as it happens.

20. During his time at the high school, the anti-gay harassment isolated plaintiff, who avoided eating lunch with his classmates to avoid the anti-gay harassment. Plaintiff ate lunch in the library and guidance office. In addition, in ninth grade, plaintiff ate lunch in the band room. In tenth grade, he ate lunch in the photo room.

21. During the 2009-10 school year, when plaintiff was in tenth grade, the bullying and harassment became more poisonous. Plaintiff was subjected to anti-gay comments from classmates between one and two dozen times a day in the hallway and in classrooms. The harassment continued to draw in part from stereotypic views about masculine behavior. For example, when plaintiff had several bouts of illness in 2009, one student, T.B., asked plaintiff if he had AIDS. T.B. refused to be near plaintiff, lest he "become gay." Other students, including F.F., N.R., K.T. and N.O., consistently called plaintiff "gay" in a derogatory manner and attributed everything about plaintiff – from the way he talked and dressed – to his sexual orientation.

22. Plaintiff regularly reported the continued harassment and stereotyping to his

5

guidance counselor, Sarah Turck, and to the vice principal, Jess Robertson, neither of whom took remedial action to stop the harassment or provide plaintiff with an educational environment free from discriminatory harassment.

23. When Plaintiff complained about the harassment to the high school guidance counselor, Candace Sossler – who served as plaintiff's guidance counselor for his 8th grade year – told him, "[K]ids are cruel. Grow a thick skin."

24. Plaintiff complained to Sossler twice per week about the harassment through December 2008, at which time he began complaining to Mary Shultis, a special education aide, who told the high school principal that the school needed to properly respond to the systemic harassment problem.

25. In tenth grade, students continuously called plaintiff "faggot" in front of the central office, where aides and secretaries were visible and within hearing range. The defendants did nothing to deter this offensive conduct. Instead, they referred plaintiff to the high school's social worker, Richard Morris. While Morris talked to plaintiff about the harassment, he did nothing to redress the misconduct that plaintiff was forced to endure.

26. When plaintiff returned to school in September 2010, he continued to be subjected to daily incidents of bullying by other students because of his sexual orientation. The harassment was so severe that plaintiff became depressed. Shortly after the school year started, while plaintiff's mother and step-father were on a short vacation, plaintiff began to engage in the practice of "cutting." Plaintiff's father made arrangements for plaintiff to enter psychological counseling to address the issues surrounding his reaction to the discriminatory behavior to which defendants were deliberately indifferent. Plaintiff's parents also engaged the services of a therapist for their son.

6

27. Meanwhile, plaintiff continued to regularly report incidents of bullying to his guidance counselor, Sarah Turck, and to the vice principal, Jess Robertson. Offending students continued to stereotype plaintiff as "so gay." Defendant took no comprehensive action to create a non-discriminatory environment for plaintiff.

28. By October 2010, the harassment was sufficiently distressing plaintiff that he was failing his advanced placement and regular classes. Previously, plaintiff's mother had sent e-mail requests to defendant Lance Edelman, the High School principal, requesting that the school take action to confront the discriminatory atmosphere at school. When no response was forthcoming, plaintiff's parents sent emails to district officials to complain about the discriminatory educational environment, setting forth specific instances of bullying behavior that plaintiff endured at Onteora High School.

29. Finally responding to plaintiff's parents, defendant Edelman scheduled a conference at school. Present at this meeting were, *inter alia,* defendants Edelman and Robertson, Sarah Turck, Rich Morris and other members of the school administration. Edelman started the proceedings by stating words to the effect that "we don't think this (the harassment) is happening." He explained that he had his "spies," referring to students who would report events in the school community to him.

30. On October 28, 2010, plaintiff's therapist wrote to defendants, indicating that his depression was largely due to the significantly unchecked harassment and continued verbal abuse by his peers. The therapist, Jenny Bates, suggested that the district contact the Hudson Valley Playback Theater group regarding a program to directly address issues of bullying and prejudice in schools. The district did not follow through on this request.

31. The home schooling that the school district provided to plaintiff was insufficient to educate him, particularly since plaintiff was in Advanced Placement English and History.

32. On November 18, 2010, plaintiff was diagnosed with major depressive disorder because of the anti-gay bullying at school.

33. On November 22, 2010, defendants authorized home instruction for plaintiff to continue until December 15, 2010.

34. Six days later, both plaintiff and his father reported continued bullying to the defendants. This harassment was occasioned by plaintiff's occasional return to the high school during the home-schooling for a few hours.

35. On December 13, 2010, plaintiff was medically excused from gym class due to anxiety and post-traumatic stress disorder.

36. To address plaintiff's educational needs, a conference was held in or about the middle of November 2010, while plaintiff was being home-schooled. Plaintiff's parents were present. As a result of this conference, plaintiff was forced to drop Spanish, trigonometry and science because he was told that in-class participation was required. Plaintiff's Advanced Placement teachers were no more supportive. Plaintiff's parents suggested that the use of a web camera would address the participation issues in Spanish and the AP classes. This idea was summarily dismissed on the basis of a "right of privacy."

37. In the interim, since plaintiff was now engaged primarily in home schooling, plaintiff and his parents were advised that the 504 Plan would have to be amended. Accordingly, no 504 Plan was in place that could be enforced.

38. In January 2011, when plaintiff was attending the high school part-time and also

8

receiving home schooling, an unknown student on school property threw a chunk of ice at plaintiff's forehead, injuring him, and referred to plaintiff as a "prick." Although defendant Robertson witnessed this attack, upon information and belief she took inadequate steps to identify the assaultive student.

39. On March 24, 2011, the school social worker, Richard Morris, reported to defendants that plaintiff was suffering from anxiety, frustration, worry and feelings of victimization by peers. Plaintiff was so distraught over the harassment and ridicule that he went several days without sleep in April 2011.

40. On April 27, 2011, no longer able to tolerate the anti-gay harassment and bullying, and discouraged by defendants' failure to remedy the educational environment, plaintiff withdrew from the Onteora Central School District. A few days earlier defendants had advised plaintiff and his parents that the revised 504 Plan had been completed, some 6 months after it should have been prepared.

41. Defendants were deliberately indifferent to the peer harassment that plaintiff sustained, ignoring the serious bullying suffered by plaintiff since seventh grade.

42. As a result of defendants' deliberate indifference to the bullying and harassment, plaintiff suffered loss of education and sustained significant pain and suffering and humiliation.

**V    CAUSES OF ACTION**

43. Plaintiffs incorporate the allegations in ¶¶ 1-42 as if fully re-stated herein.

44. Through its deliberate indifference to the same-sex harassment suffered by plaintiff, which drew from sex stereotypes, the school district violated Title IX of the Civil Rights Act of 1964.

45. Through their deliberate indifference to the same-sex harassment suffered by

9

plaintiff, the individual defendants violated the Equal Protection Clause of the U.S. Constitution, as made actionable by and through 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Honorable Court:

a. accept jurisdiction over this action;

b. empanel a jury to fairly hear and decide this action;

c. award to plaintiff compensatory damages resulting from plaintiff's pain and suffering resulting from defendants' deliberate indifference;

e. award to plaintiff punitive damages against the individual defendants on his § 1983 claim for the wanton violation of his civil rights;

f. award to plaintiffs reasonable attorneys' fees and costs expended in litigating this matter; and

g. award to plaintiffs such other relief deemed just and proper.

Dated: January 31, 2012

Respectfully submitted,

STEPHEN BERGSTEIN (507402)

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for plaintiff